## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| <u>Rev. ANNE ARMSTRONG</u> ) | |
|         Applicant/Plaintiff ) | |
| ) | Civil Action No. |
| v ) | |
| ) | |
| <u>GINA RAIMONDO</u>, ) | |
| in her capacity as Governor of Rhode Island, ) | |
| **and in her personal capacity** ) | |
|         First Defendant ) | |
|         and ) | |
| DEBORAH WHITE, in her capacity as personnel/officer ) | |
| of the Rhode Island Division of Capital Asset Management ) | |
| and Maintenance, ) | |
| **and in her personal capacity**, ) | |
|         Second Defendant ) | |

**<u>ACTION FOR PROHIBITIVE INJUNCTION</u>**

Introduction:

1. This action for injunctive relief (to be promptly followed by a motion for emergency pre-trial inunction hearing) against the State of Rhode Island, so the Applicant/Plaintiff can conduct Catholic prayer rites, comes with very short notice on a conflict arising Friday December 11 2020, and as such is both literally and figuratively a "Hail Mary" pleading.

2. Applicant/Plaintiff Rev. ANNE ARMSTRONG of
   99 HUDSON POND ROAD, WEST GREENWICH, RHODE ISLAND
   is the head of a Hebrew Catholic Church and a well-known repeated past demonstrator of Catholic religious exercises at the Rhode Island Statehouse.  She is unrepresented.

3. First Respondent/Defendant is Rhode Island Governor GINA RAIMONDO, of 82 SMITH STREET, PROVIDENCE, RHODE ISLAND, and as such, professionally issues Executive Orders, and is responsible for enforcing laws and especially Constitutional rights.  As such, she is not responsible for enforcing non-laws upon people without some sort of Order, though it is pleaded below, backed by affidavit evidence, that she did (and/or seeks to do) just that, and so the action is brought against also the Governor's person, since the Office of the Governor may only enforce existing laws and Orders.  It is pleaded here that if the Governor's Office may not possibly have enforced or sought to enforce a purely fictional law, then the person must have done it, if not the Office.

4. Second Respondent/ Defendant DEBORAH WHITE, also of 82 SMITH STREET, PROVIDENCE, RHODE ISLAND, is professionally responsible for booking and reserving the Rhode Island Statehouse for religious exercise demonstrations and special events, in her capacity at the Rhode Island Division of Capital Asset Management and Maintenance.

5. Second Respondent /Defendant WHITE has previously granted or allowed tremendous accommodation for free speech and religious exercise at the Rhode Island Statehouse, on numerous occasions.

6. Second Respondent/ Defendant WHITE is not professionally or personally responsible for enforcing non-laws upon people without some sort of Order, though it is pleaded here, backed by affidavit evidence, that she did just that (or seeks to), and so the action is brought against also the Second Defendant (WHITE)'s person, since the Office of the Governor may only enforce existing laws and Orders. It is pleaded here that if WHITE's Office may not possibly have enforced or sought to enforce a purely fictional law, then the person must have done it, if not the Office.

7. This is an action for injunction against the named State Executives, and their persons, from enforcing a public denial of access to the Statehouse for a 3-person, 1-household rosary prayer with a brief Biblical trumpet sounding, on the afternoon of December 11, 2020, which is the "Vigil" (i.e. "Eve") of Our Lady of Guadalupe's annual Feast Day the following day Dec 12, 2020. The injunction also seeks protection for future, as yet-unscheduled similar celebrations, which are well within the normal, established *status quo* bounds of activities conducted in the Statehouse both by the public at large, and by the Applicant/Plaintiff Rev. ARMSTRONG.

8. Applicants/Plaintiffs **plead that there actually is no Executive Order barring public entry for such events at the Statehouse, nor any law,** and that the Defendants/Respondents are obliged in their professional capacity to protect public access to the Statehouse. Omissive failure to do so would be an offense, but to do the opposite (block access) arbitrarily and capriciously, with no law or Order allowing it, is a willful dereliction of duty and an outright abuse not only of power, but of a lack of a power, more akin to false assumption of Office. This forms the basis for personal liability of the Defendants, as well as official.

9. Further and in the alternative, it is pleaded that if there even were such a law, it would be Unconstitutional under the recent US Supreme Court ruling in *Brooklyn Diocese v State of New York* 592 U. S. \_\_\_\_ (2020).

Facts:

10. First Defendant Gov. RAIMONDO's Rhode Island Executive Orders 20-04 and 20-05 of March 16, 2020, do not close the Statehouse to the public entirely, only for large groups. Nonetheless, First Defendant told news outlets on/about that date that the Statehouse was closed to the public, and this pretense has been kept up as the Executive Orders were extended over time with new extending Orders to a range of dates including December 11, 2020, the Vigil of the Feast of Our Lady of Guadalupe, and into the foreseeable future when additional religious expression would reasonably (based on past history) be near-certain to occur.  This year's Dec 11 Our Lady's Feast Vigil is a once-in-10-lifetimes event, in that it immediately precedes a Christian astronomical alignment event which last occurred in 1226, nearly 800 years ago, and which will not happen again within a lifetime.

11. Applicant/Plaintiff Rev. ARMSTRONG asserted via telephone on/about November 30, 202 and email on/about Dec 2, 2020 to the Second Respondent/Defendant WHITE that she (ARMSTRONG) is compelled by her religion to on December 11, 2020, pray a rosary, and to blow a Hebrew Biblical ram's horn trumpet *shofar* with one or two Church colleagues, inside the Rhode Island Statehouse rotunda.  The Christian astronomical event being celebrated last occurred in 1226 AD before the Statehouse was built, and will not recur in any party's lifetime, and so this is the only opportunity to accomplish it.  The proposed Rhode Island Statehouse event is only properly conducted on Dec 11, 2020 the closest Feast Eve Vigil for Our Lady of Guadalupe to this year's impending Hebrew Catholic planetary conjunction on December 21 (**an ultra-rare event which last occurred in 1226 AD**), as per a private religious revelation to Applicant/Plaintiff ARMSTRONG by Our Lady.

12. Alternately, the Statehouse, a public building, is currently closed completely to the public under an Executive Order not yet visible to the Applicant/Plaintiff, with public-facing functions are being conducted only electronically (since Order 20-05 allows public meetings to go online).  If this is true, then such an Executive Order, where it bars the relevant limited public access to the Statehouse for prayer purposes, is hereby challenged on the same Constitutional grounds which carried in the US Supreme Court ruling *Diocese of Brooklyn v New York* --   that stopping first amendment expression more strictly than limits applied to salons and liquor stores is improper.

14. While it appears that there is not actually such on Order to challenge for Constitutionality, if there were, it is being enforced with bad inequality, because 2nd Defendant/Respondent WHITE told Applicant/Plaintiff ARMSTRONG by telephone on or about Nov 30, 2020 that journalists were being allowed into the Statehouse "on official business", even though journalists are not officials.  WHITE said this in response to ARMSTRONG's query about reporters publishing images of themselves inside the Statehouse.

15. Massage parlors and bars are and/or have been open throughout the time that the Statehouse purported to be closed, an additional inequality.

16. In any event, the Second Defendant (WHITE) said via telephone on or about November 30, 2020 to the Applicant/Plaintiff ARMSTRONG, the proposed ceremony could not be allowed, pursuant to enforcement of the First Defendant's apparently fictional or deficient Executive Order.

17. The proposed Court Order sought here by the Applicant/Plaintiff does not require that any official or member of the public be brought within 6 feet (the standard social distancing guideline) of the ceremonial practitioners, and the Applicant/Plaintiff's proposed scheduling is flexible enough to not impede the public's or officials' reasonable use and enjoyment of the facility in any abnormal way.  This gathering is limited by the Draft Order to no more than 3 participants from a single household.

Argument:

    Standing:

18. Plaintiff/Applicant's standing is effectively similar to that of the Brooklyn Roman Catholic Diocese and the joining synagogue in the recent US Supreme Court ruling in *Brooklyn Diocese v New York* 592 U. S. \_\_\_\_ (2020)  -- except that standing is stronger here, because the New York case challenged an anti-religious gathering  law for Constitutionality, whereas

this current case has no law in place at all to challenge, only enforcement of a non-extant rule which would be Unconstitutional if it were even a law - as is pleaded herein.

### Ripeness/Mootness

19. The passage of temporal dates for events cannot, it is pleaded, give grounds for temporal mootness defenses in these circumstances, for the same reason State's mootness pleadings failed in *Brooklyn Diocese v New York,* where an event deadline had come and gone, but mootness was no defense since new collisions were likely to occur in the future, relative to Executive Orders rapidly flipping on and off like the Christmas lights on Rhode Island's infamous "Big Blue Bug" on I-95.

20. If there is an Executive Order banning the public from the Statehouse totally enough to prohibit the proposed religious service, then it and its enforcement in these circumstances (tiny religious gathering of all one household, maintaining distance) offends SCOTUS' recent ruling from *Brooklyn Diocese v New York* 592 U. S. ____ (2020).  This is because even the very strictest Rhode Island Executive Order (20-100) allows public entry to secular high-contact institutions (like massage parlors, e.g.) in personal numbers and configuration limits which the Applicant/Plaintiff Armstrong safely meets here, and so denying access makes no sense, i.e. is unreasonable.

## Standard of Review

### No Review Standard

21. Standard of review normally only applies to laws (however vague) and enforcement of laws, and not to non-laws or purely fictional laws said to exist, but which can be found neither in law repositories, nor even in the language of recent Executive Orders of highly challengeable validity.

22. Plaintiff/Applicant Rev. ARMSTRONG asserts that no Executive Order barring public use of the Statehouse exists, she also pleads that further and in the alternative that **if there were such a law**, it would not survive Constitutional review in these circumstances.  The only appropriate standard of review in such cases where a non-law is enforced (as opposed to an Unconstitutional law) is that relevant to the offense of fundamental rights deprivation under color of law, which, while the elements clearly exist herein, is not pleaded by the Applicant/Plaintiff at this stage in these proceedings.

Alternatively, Three Review Standards

23. There are 3 standards of review (strict, rational basis, and intermediate) for religious Constitutional challenges where free exercise is burdened, depending on how neutral the burdensome law or its enforcement are (or, on the other hand, how much it targets a religion).  All 3 standards were put forth to a degree in *Brooklyn Diocese v New York* 592 U. S. ____ (2020), where the Governor tried to let numerous secular institutions stay more open for public gathering than religious institutions were, for no discernible reason.  Arguments of deliberate singling-out of religious worship (attracting "strict review", i.e. "was any exercise burdened at all?") were promoted and held some sway with SCOTUS, Equal Protection against massage parlors and liquor stores was also argued, attracting "intermediate review" of reasonableness of the Order, in the circumstances of how fairly it was enforced on no-churches, from a common sense perspective that Churches cannot be denied rights expressly granted to secular institutions. Finally, arguments were made that the State lacked a compelling interest to bar worship even without any bad or unequal intent (which attracts "rational basis review" standard, in which the Government may only burden religious exercise if there is some "compelling interest" served by the burden, as well as a burden "narrowly tailored" to meet that interest).  SCOTUS found the same result regardless of which of the 3 review standards were used, subject to different Justices' interpretations.

24. That *Brooklyn Diocese* SCOTUS ruling makes clear that a Governor or State cannot willy-nilly determine which functions are essential enough to stay open during a pandemic, and which are not, but instead, must use a reasonable standard, and one which is also applied to

institutions more or less equally with regard to the compelling interest being served, as to factors like numbers of people, building capacity, and spacing between people.

25. Barring all public entry to the Statehouse generally, let alone barring 1-time, 3-person, special-permit religious exercises, is not reasonable either at all, or especially when compared to the high-contact, high-risk, densely populated secular institutions going about their business with much lower legally required precautions  -- the main principle in *Brooklyn Diocese.*

Preliminary Injunction Motion, and its Standard of Review

26.  For reasons of timeliness, the application will be made simultaneously with a motion for emergency pre-trial injunction, the Standard of Review of which in federal case law is analogous to Rhode Island law that the Court of first instance determine whether:

(i)  the moving party is likely to succeed on the merits,
(ii) the plaintiff is likely to suffer irreparable harm without the injunction,
(iii) the balance of equities and hardships is in the plaintiff's favor, and
(iv) an injunction is in the public interest.

<u>Winter v. Natural Resources Defense Council, Inc</u>, 555 U.S. 7 (2008),

Likelihood of Success on the Merits

27. The recent US Supreme Court ruling from New York's anti-Church Executive Order shows a reasonable likelihood of success on the merits.

Status Quo Preservation, to Prevent Irreparability

28. The free expression of religion, and lawful access to the Statehouse are the *status quo* protecting against irreparable harm.  The moving party, Applicant/Plaintiff Rev. ANNE ARMSTRONG, is a well-known clergy with a decades-long reputation for execution of compulsory, arduous religious exercises such as rosary vigils, in Rhode Island, including within the Statehouse.  To her, the contested exercise is a religious obligation, and the slated date is a unique occurrence, in terms of Christian astronomy, which will not occur again in any Party's lifetime and which has not occurred for almost 800 years, last in 1226 AD.  It is a religious compulsion not just to carry out, but to do so at a particular place within a narrow time window, similar to various rites conducted by Catholics around the world on this very same Feast day and its Eve.  Prayer, and access to the Statehouse, are the *status quo* protecting against irreparable harm.

29. Further magnifying the irreparability of denial or delay is the fact that the contested ceremony is but 1 leg of a 3-part trek also encompassing 2 federal National Parks, one here in Rhode Island (Roger Williams National Memorial), and one in Washington DC (Lincoln Memorial), which are subject to federal permit applications pending, not directly related to this case legally but for the weight of irreparability at stake.  The *status quo* to be protected is prayer, and access.

30. Looked at from a different aspect, the free exercise of religion in public buildings via respectful permit application is the *status quo* (and hence deserves the protection against irrevocability) in 4 additional key ways, from recent to conventional to historic, as follows:

31. First, the most obvious *status quo* is that large secular Rhode Island institutions currently remain open, even fairly private ones, despite high traffic flow, more people from more households, with less distancing and with less-essential importance than public access to the Statehouse and/or religious expression.  Denials of this fundamental normal right are irrevocable for the time they are denied, and cannot be restored.  This is especially true if there is not even any law or Order closing the Statehouse.

32. The second *status quo* issue is a fairly mechanical/technical *one*, a lack of primary bicameral legislature -- despite the relevant "emergency" having persisted long enough for the legislature to have weighed it and acted, they did not do so. Emergency Orders by nature, on the other hand, are for temporal emergencies too sudden for a legislature to act. The lack of a law is the lack of a law. That is a *status quo* which, if broken, denies not only an actionable right for a given time and place, irreplaceably, but a fundamental right, the **deprivation of which under color of law is a federal crime** (TITLE 18, U.S.C., SECTION 242) for that very reason -- such enforcements are so odious and onerous that they upend lives, break lesser faiths, strain families, and restrict lawful citizens' very movements.

33. The third *status quo* is a modern conventional one -- that the Defendant/Respondent has always (even outside of normal rules, when First Amendment issues are at stake) gone to tremendous lengths to foster Statehouse access to the public without even a permit, sometimes in noisy thronging masses, for key fundamental expressions such as free speech and prayer -- even when emergency fire safety, hours-of-operation, and other crucial matters come into play from the large numbers of people that are specially accommodated.

34. Finally and most importantly, the *status quo* of public religious exercise being fostered, by special permit if necessary, is the basis for this State's and this Nation's very definition, historically, carved from the pleadings and deeds of those whose fundamental religious liberties faced challenge. This, of all fundamental freedoms, literally "Constitutes"

    A. our State's identity, as reflected in the Rhode Island State Constitution's ultra-strong religious protections (Article 1, Section 3), whose religious protections are more strongly worded than those of any other State in the Union, and

    B. Our national identity, since the US Constitution's religious freedoms historically flowed precisely from Rhode Island founder Roger Williams' 1636 AD religious peace compact.

35. Ultimately, we are guided as to *status quo* by the words of Roger Williams himself, **inscribed in stone on the back of the Rhode Island Statehouse, in all capital letters:**

> *"To hold forth a lively experiment, that a most flourishing civil State may stand and best be maintained with full liberty in religious concernments"*

Balance of Equities

36. The balance of equities favors the moving party as follows:

Respondent/Defendant Equities

37. Possible concerns of Defendant, and what obviates them:

   A. Governor's Order prohibits entry  --  under challenge

   B. Public's and officials' safety concerns  --  proposed Order alleviates this via social distancing expanded well past State-normal guidelines, plus the selection of a time of day away from others' use of the facility

   C. Labor to specially allow entrants' access while normal limits are upheld  --  the Capitol Police routinely provide untraditional access to event organizers on an *ad hoc* basis.

   D. Other  --  Moving party undertakes to reasonably solve, via the shape of the Order, any other reasonable concern raised by the Defendant.

Applicant/ Plaintiff Equities

38. If denied, the Applicant/Plaintiff suffers the irreparable harm specified above. This would be ground on its own, without regard to the insult of being denied for no apparent reason, given the concessions offered to obviate the risk the restriction seeks to control.

Public Interest

39. Below, several public interest concerns are addressed (as in the Draft Order itself) which the State is anticipated to raise.

40. Public safety  --  safety measures in the Draft Order meet and exceed CDC safety guidelines and Rhode Island laws, Orders, and guidelines.  Most importantly, the Draft Order's safety features are better than those for private and secular Rhode Island institutions.

41. Floodgate principle  --  Fear of a flood of public applicants overwhelming the Statehouse with similar requests is obviated by common sense.  The existing permit application process, with or without a shutdown order, has always sufficed Statehouses around the world to limit public activity to a reasonable level.

Remedy

42. The Draft Order submitted suffices, and is necessary unless the Defense yields voluntarily by consent Order.

Conclusion

43. In conclusion, a reiteration the words carved in stone on the Rhode Island Statehouse exterior:

*"To hold forth a lively experiment, that a most flourishing civil State may stand and best be maintained with full liberty in religious concernments"*

*44.*  A draft Order is attached

# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Rev. ANNE ARMSTRONG | ) | |
| Applicant/Plaintiff | ) | |
| | ) | Civil Action No. |
| v | ) | |
| | ) | |
| GINA RAIMONDO, | ) | |
| in her capacity as Governor of Rhode Island, | ) | |
| **and in her personal capacity** | ) | |
| First Defendant | ) | |
| and | ) | |
| DEBORAH WHITE, in her capacity as personnel/officer | ) | |
| of the Rhode Island Division of Capital Asset Management | ) | |
| and Maintenance, | ) | |
| **and in her personal capacity**, | ) | |
| Second Defendant | ) | |

### **DRAFT ORDER**

1. It is hereby ordered that the Defendant/Respondents do not enforce any ban or inhibition on the Plaintiff Rev. ANNE ARMSTRONG's free exercise of religion at the Rhode Island Statehouse more strictly than restrictions placed on shoppers or diners, in terms of number of participants, right to enter, or other virus-protective tactics required. The specific persons, times and places covered by this Order are limited to the following:

    A. The Rhode Island Statehouse indoor rotunda area and sufficient access and egress to those areas, and

    B. The rosary and Biblical trumpet (shofar) sounding to be undertaken by the Plaintiff/Applicant Rev. ANNE ARMSTRONG at those areas, and

    C. Up to 2 additional church members from Rev. ARMSTRONG's household, and

    D. Subject to no social distancing guidelines not imposed elsewhere in public, and

    E. On date of Dec 11, 2020, as close to sundown or the close of business is as reasonably practicable, with regard to the Applicant/Plaintiff Rev. ARMSTRONG's sought-after Vigil of the Feast of Our Lady of Guadalupe event, and

    F. Any future religious expressions by the Applicant/Plaintiff Rev. ARMSTRONG, subject to her reasonable compliance with normal limits to free speech and religious expression.

2. So ordered,

    Honorable

    _____ Justice of the United States District Court for the District of Rhode Island

    This _____ day of the month of _____ in the year 2020.

Humbly submitted,

Rev. Anne Armstrong

/Anne Armstrong/                                    December 4, 2020, the Feast of St Barbara.

_____      _____              *St. Barbara, Pray for Us!*

     [signature]                                    [date]

99 Hudson Pond Road

West Greenwich, Rhode Island 02817

401-304-6020

annearmstrongri@gmail.com